UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TYRON SINGLETON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:07CV554 HEA |
| | ) |
| EUGENE STUBBLEFIELD, et al., | ) |
| | ) |
| Defendants. | ) |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment, [Doc. No. 12]. Plaintiff has failed to file an opposition to the motion. For the reasons set forth below, the Motion is granted.

### **Introduction**

Plaintiff is was a pretrial detainee housed at the Justice Center, which is owned and operated by the City of St. Louis correctional system. He filed this action alleging that his civil rights under 42 U.S.C. § 1983 had been violated through a policy of Defendants that precludes his attendance to religious services.

### **Facts and Background**

Plaintiff has presented no opposition to Defendant's statement of undisputed material facts, which are as follows:

Plaintiff was incarcerated at the Justice Center from March 4, 2006 through August 14, 2006, awaiting trial on criminal charges. On March 19, 2006, Plaintiff filed the instant action alleging that Defendants have a policy which precludes his attendance to religious services.

Plaintiff was assigned to the third floor tier of the housing unit. The units are managed under a Direct Supervision concept. The officers' work station is positioned where the inmates recreate. There are no bars separating the inmates from the officer. There is one officer per housing unit of approximately 75 inmates. As the inmate population increased and the inmates became more violent, it became necessary to reduce the numbers of inmates that one officer can effectively supervise at a time. When the system of recreating by separating the tiers began, the officer was then able to supervise approximately 35-37 inmates at a time rather than 70-75.

The Third floor tier volunteer for Muslim services is scheduled every Friday on the second shift from approximately 7:40 to 8:40. Under usual circumstances inmates in Plaintiff's tier are allowed to attend Muslim services every other Friday. Inmates from other tiers are not allowed to attend the same religious services because the separation of tiers and the prevention of mixing the inmates have significant safety and security advantages. The inmates on opposite tiers often

become competitive. They form alliances with the inmates on their same tier. When one inmate gets into a dispute with an inmate from a different tier, his comrades on the same tier must show allegiance and join in the dispute.

There is no sign up sheet for religious services. The call is for anyone who wants to attend. Other than the inmate being out on recreation at the time of the call, there is no prerequisite or screening process for attendance. This gives rise to impulsive behavior and inmates can plan gang fights.

There are distinct differences between the Religious Services Program and the Adult Literacy Program. The Adult Literacy Program has the same twenty inmates assigned every day. There is no optional attendance for whoever wants to attend like the Religious Services Program. The twenty people selected for religious programs are selected differently. The first five inmates who respond to the call are selected from each of the four units on the third floor tier. The five inmates that want to attend must come from those inmates who are already out on recreation. Inmates' recreation time alternates and is divided by tiers (*i.e.* every other Friday either the lower level tier or the mezzanine level tier recreates between 7:40 and 8:40). There is no room for impulsive attendance in the Adult Literacy Program. The inmates that attend must be on the list to attend. Behavior problems are not tolerated in school and are identified early during the inmates' school attendance.

When behavior problems occur, the inmate is not allowed to attend school anymore. Since the students are pre-determined and have proven their interest in pursuing higher education, it is less likely that they will act out aggressively. The housing unit officers' procedure instructs the officer to escort the inmates who are coming form the opposite level from those inmates out on recreation from their cell doors or stairway to the unit exit slider.

    Because there is no sign up sheet or prerequisites for religious services, impulsive behavior may arise and inmates can plan gang fights when the cell doors are unlocked for an all call for a religious service. During an all call, there would be frequent opportunities to plan for violent behavior from inmates whose motive for saying they want to attend a religious service may be to act out their aggressions.

    There are also distinct differences between the Religious Services and social/professional visits. The main distinction is that in the social/professional visits, there is no room, or opportunity, to let out groups of inmates at a time. Inmates in groups cannot really plan to visit at the same time because the officer approves the visits and only four inmates at a time can have a visit at the same time. There is, therefore, a lesser likelihood of gang violence occurring. When an inmate is called for a visit and the opposite tier is out on recreation, the procedure is for the officer to escort the inmate from his cell door to the visiting booth door. If tiers

were mixed for religious services any group of inmates could leave their cells and act out aggressively on other inmates on the opposite tier every Friday.

## Discussion

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v. City of Kansas City, Mo.,* 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Littrell ,* 459 F.3d at 921. "The party opposing summary judgment may not rest on the allegations in its pleadings; it must 'set forth specific facts showing that there is a genuine issue for trial.'" *United of Omaha Life*

*Ins. Co. v. Honea,* 458 F.3d 788, 791 (8th Cir.2006) (quoting Fed.R.Civ.P. 56(e)); "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248; *Woods,* 409 F.3d at 990. To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. *Wilson v. Int'l Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir.1995). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung* 422 F.3d 630, 638 (8th Cir. 2005). Viewing the evidence in the light most favorable to the nonmoving party and giving

the nonmoving party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Samuels v. Kansas City Mo. Sch. Dist.,* 437 F.3d 797, 801 (8th Cir.2006). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."

Plaintiff has presented no evidence to establish that the safety and security concerns are not valid. Indeed, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Hamilton v. Schriro*, 74 F.3d, 1545, 1550 (8th Cir. 1996). Safety and security are clearly legitimate penological interests. The policy of separating the tiers is reasonably related to these interests. Plaintiff cannot rest on his pleadings, rather, he must present sufficient evidence to establish the contrary. This he has failed to do and summary judgment is therefore proper.

## Conclusion

Defendants have established that there exists no material issues of fact and that they are entitled to judgment in their favor.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary

Judgment, [Doc. No. 12], is granted.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 2nd day of January, 2008.

_____
   HENRY EDWARD AUTREY
   UNITED STATES DISTRICT JUDGE